**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| ALISSA'S FLOWERS, INC. | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| | )   Case No. _____ |
| | ) |
| STATE FARM FIRE AND CASUALTY CO. | ) |
|    <u>Serve at:</u> | )   Jury Trial Demanded |
| | ) |
|      **Director** | ) |
|      **Department of Insurance** | ) |
|      **301 West High Street** | ) |
|      **Room 530** | ) |
|      **Jefferson City, MO 65101** | ) |

**CLASS ACTION COMPLAINT**

In the wake of the COVID-19 pandemic, virtually every major insurer has reimbursed automotive policyholders a portion of their premiums due to policyholders' lower driving rate during the crisis. One major insurance CEO succinctly stated, "[W]e believe [our customers] overpaid in their premiums. It's our duty to return that premium, because it belongs to them."[1] Yet insurers have not reimbursed *businesses* for premiums related to their general commercial liability, even though businesses have largely been closed and/or significantly curtailed in their availability to the public.

This lawsuit seeks to remedy that disparity, and seeks damages and other relief on behalf of businesses who were overcharged premiums during the COVID-19 pandemic. In support of its Complaint, Plaintiff respectfully submits the following:

---

[1] Car Insurance Companies Giving Customers Partial Refunds during Pandemic (April 15, 2020) (available at https://www.caranddriver.com/news/a32071984/car-insurance-price-cuts-coronavirus/) (last accessed May 13, 2020).

1

## PARTIES

1. Plaintiff Alissa's Flowers, Inc. is a Missouri business that owns and operates a flower shop in Independence, Jackson County, Missouri.

2. Defendant State Farm Fire and Casualty is an insurance company licensed to do business in Missouri. State Farm is authorized to write, sell, and issue insurance policies providing property and casualty coverage in exchange for a premium to businesses nationwide including in Missouri.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Alissa's Flowers and State Farm are citizens of different states and the amount in controversy is believed to exceed $75,000 exclusive of interest and costs. In addition, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this lawsuit was filed as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, the matter in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, the class consists of at least 100 members, Alissa's Flowers and State Farm are citizens of different states, and no exception applies.

4. Venue is proper in this district under 28 U.S.C. § 1391 because Alissa's Flowers resides in this district and because a substantial portion of the acts and conduct giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

5. Plaintiff operates a flower shop at 19321 E. US Highway 40, Independence, Missouri 64055.

6. Defendant State Farm issued Policy No. 95-C7-X394-8 to Plaintiff, which is attached as Exhibit A. (hereinafter "the Policy").

7. Like thousands of other businesses across the United States, Plaintiff's operations have been and continue to be disrupted by government restrictions related to the novel coronavirus, SARS-CoV-2, which causes the infectious disease COVID-19.

8. COVID-19 first appeared in late 2019. It is a highly contagious virus that has rapidly spread and continues to spread across the globe. It can cause severe respiratory distress and even death.

9. COVID-19 is spread by a number of methods, including "community spread," meaning that some people have been infected and it is not known how or where they became exposed. Public health authorities, including the CDC, have reported significant ongoing community spread of the virus including instances of community spread in all 50 states.

10. The CDC has reported that a person can be become infected with COVID-19 by touching a surface or object (like a fork, plate, table, or chair) that has the virus on it, and then touching their own mouth, nose or eyes.

11. COVID-19 has been declared a pandemic by the World Health Organization.

12. The COVID-19 pandemic is a public health crisis that has profoundly impacted American society, including the public's ability to patronize restaurants, bars and retail stores.

13. Many state and local governments have issued Stay at Home orders to slow the spread of COVID-19, thereby limiting public activities and the activities of businesses. These Stay at Home Orders have caused the suspension of non-essential and essential businesses, including Plaintiff's.

14. Because of the stay-at-home orders, normal business and consumer activity has been severely disrupted. For example, insurance industry experts estimate that business closure

3

losses just for small businesses with 100 or fewer employees has increased to $255 billion to $431 billion *per month*.[2]

15. Similarly, drivers are driving significantly less than before COVID-19; industry experts estimate that vehicle miles traveled has fallen by over 50% during the pandemic.[3]

*Automotive Policyholders Find Relief*

16. In response to the dramatic decline in vehicle miles traveled, consumer groups called on insurers to refund portions of automobile policy premiums; these groups included the Center for Economic Justice (CEJ) and the Consumer Federation of America (CFA).

17. In a joint letter dated March 18, 2020, the groups called on state insurance commissioners to consider premium offset payments to automotive policyholders "whose miles driven has declined and will continue to remain lower than anticipated at the time of policy rating . . ."[4]

18. The insurance industry responded and began issuing premium refunds to its automotive policyholders.

19. As of April 13, 2020, insurance companies that collectively occupy nearly 90% of the market share have refunded or plan to refund over $6.5 billion in automotive premiums to policyholders.[5]

---

[2] APCIA Releases New Business Interruption Analysis (April 6, 2020) (available at http://www.pciaa.net/pciwebsite/cms/content/viewpage?sitePageId=60052) (last accessed May 13, 2020).

[3] New Car Accident Data Show That Most Auto Insurance COVID-19 Refunds Should Be Twice As Much as Promised to Date (May 7, 2020) (available at https://consumerfed.org/press_release/new-car-accident-data-show-that-most-auto-insurance-covid-19-refunds-should-be-twice-as-much-as-promised-to-date/) (last accessed May 13, 2020).

[4] *See* CEJ and CFA letter (March 18, 2020) (available at https://consumerfed.org/wp-content/uploads/2020/03/COVID-19-Auto-Premium-Relief-Letter.pdf) (las accessed May 13, 2020).

[5] *See* Report Card to Date on the $6.5 Billion+ Promised To Auto Insurance Customers, Table 1 (April 13, 2020) (available at https://consumerfed.org/press_release/report-card-to-date-on-the-6-5-billion-promised-to-auto-insurance-customers-as-people-drive-less-due-to-covid-19/) (last accessed May 13, 2020).

4

20. Because all insurers use some form of miles driven to determine rates, the responses to COVID-19 "will result in savings to the system that can be quantified and returned to American consumers." *See* FN2, *supra*.

21. Put another way, one CEO acknowledged that customers "over paid in their premiums" and it is "our duty to return that premium, because it belongs to them." *See* FN1, *supra*.

22. In statements to regulators, companies have acknowledged the windfall and stated that emergency orders in response to COVID-19 "have temporarily but significantly reduced expected costs . . ."

23. Thus, when faced with evidence of a change in insurable conduct and recognizing the windfall that insurance companies may receive, insurance companies are refunding premiums to automotive policyholders.

### *Businesses Find No Relief*

24. Despite a comparable drop in insurable conduct, insurers have not offered any sort of premium relief to businesses, even though they also have experienced a substantial reduction in business and exposure due to COVID-19.

25. Thus, while insurers offer billions of dollars in insurance premium relief to automotive policyholders, they are offering no premium relief to businesses that are experiencing a similar reduction in exposure.

26. Recognizing this inconsistency, the CEJ and CFA weighed in. In a letter dated March 30, 2020, the two groups cautioned:

> Personal auto insurance is not the only type of insurance experiencing a dramatic reduction in exposure. Businesses whose premium is based on employee count or measures of serving the public such as receipts and who have been forced to close

5

Case 2:20-cv-04093-BCW   Document 1   Filed 05/28/20   Page 5 of 15

*are also experiencing radical reductions in exposure*—changing the exposure basis used when the policies were originally written.[6]

27. Similarly, the Alaska Department of Commerce warned that for many property and casualty insurance policyholders, "initial estimates [for exposure] are expected to be much higher than the exposure actually realized."[7]

28. Thus, consumer watchdogs and regulators recognize that business policyholders will incur exposure at a rate far less than their premiums contemplated, meaning they overpaid for their premiums.

*Plaintiff's Experience*

29. Like automotive policyholders, as a result of the widespread stay-at-home orders, Plaintiff has experienced a "radical reduction" in its exposure to potential claims under the Policy, as evidenced by its reduced hours of operation, limited operation, and receipts during the effective period for the stay-at-home orders.

30. For example, Plaintiff's business closed its retail store to the public from March 16, 2020 to May 11, 2020.

31. The closure resulted in a loss of approximately $100,000 from in-store sales revenue compared to activity from 2019.

32. This level of activity is a marked departure from previous months.

33. Because Plaintiff has experienced a significantly lower exposure rate due to COVID-19, Plaintiff also overpaid for its premiums.

---

[6] *See* CEJ and CFA letter (March 30, 2020) (available at https://consumerfed.org/wp-content/uploads/2020/03/COVID-19-Auto-Premium-Relief-Letter-3-30-20.pdf) (last accessed May 13, 2020) (emphasis added).

[7] Alaska Department of Commerce, Bulletin B 20-10 (March 20, 2020) (available at https://www.commerce.alaska.gov/web/Portals/11/Pub/INS_B20-10.pdf) (last accessed May 13, 2020).

34. The declarations page of the Policy indicates the policy period is 12 months.

35. The policy is effective from March 5, 2020 to March 5, 2021.

36. Plaintiff's policy constitutes a commercial policy under the applicable insurance laws because it is insurance for a business that "is not for personal, family or household purposes, and which is provided by issuance of a policy of insurance and not merely a binder for such insurance coverage."

37. Commercial policies are unregulated lines of insurance because any regulatory filing is submitted "for informational purposes only" and the rates therein "are not to be reviewed or approved by the department of commerce and insurance as a condition of their use."

38. In the case of Plaintiff's policy, she purchased a Businessowners Policy that contained two sections of coverage: Section I-Property Schedule and Section II-Liability Schedule.

39. The Policy explains:

> The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

40. The Policy further indicates that Defendant may *raise* premiums based on activities during the effective time period of the Policy:

> Undeclared exposures or change in your business operation, acquisition, or use of premises may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

41. Defendant State Farm evaluated the exposure of Plaintiff for a twelve (12) month policy period, but it did not consider the shutdown due to COVID-19.

42. As a result of the COVID-19 pandemic, Plaintiff's current exposure is a dramatic departure from Plaintiff's exposure when it purchased its general commercial liability policy from Defendant, and materially changed the underwriting guidelines applicable to Plaintiff.

43. For example, underwriters consider square footage, payroll, gross sales, and other factors in establishing premium amounts for commercial general liability policies—the limitations mandated by the COVID-19 pandemic have impacted each of these categories to the benefit of Defendant and other insurance companies.

44. In this respect, Defendant's premium rates are excessive and unlawful because they are unreasonably high for the insurance coverage provided. Like automotive policyholders, Plaintiff and the Class have overpaid their commercial insurance premiums in an amount to be determined.

45. In this lawsuit, Plaintiff does not seek damages related to any claim for business interruption coverage.

## CLASS ACTION ALLEGATIONS

46. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

47. Plaintiff brings this class action and seeks certification of the claims on behalf of the following Class:

**All persons and entities that: (a) purchased commercial liability insurance with State Farm that had a six (6) month or longer policy period; (b) paid a premium for the coverage based on State Farm's rates and rules; and (c) were subject to a Stay at Home Order.**

48. Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

49. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, unnamed co-conspirators, successors, subsidiaries, and assigns.

50. This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

51. **Numerosity – Rule 23(a)(1).** Class members are so numerous that their individual joinder is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time, but in 2019 State Farm was the second largest insurer of small businesses with approximately 5.5% of the market share. State Farm has indicated it insures approximately 2,800,000 small businesses.[8] Accordingly, Plaintiff and the Class satisfy the numerosity requirement of Rule 23. Class members may be notified of the pendency of this action by mail, published notice, or other appropriate methods.

52. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), 23(b)(3).** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

   a. Whether Defendant calculated premiums based on factors common to the Class;
   b. Whether the presence of those factors were materially affected or diminished due to the COVID-19 pandemic;
   c. Whether, in light of the COVID-19 pandemic, Plaintiff and Class members overpaid their premiums for general commercial liability;

---

[8] *See* State Farm Company Overview: Fast Facts, https://www.statefarm.com/about-us/company-overview/company-profile/fast-facts (last accessed May 18, 2020).

d. Whether Defendant's retention of those overpaid premiums constitutes a wrongful financial windfall;

e. Whether the case may be maintained as a class action under Fed. R. Civ. P. 23;

f. Whether and to what extent Class members are entitled to damages and other monetary relief;

g. Whether and to what extent Class members are entitled to equitable relief, including restitution, rescission, a preliminary and/or a permanent injunction; and

h. Whether and to what extent Class members are entitled to attorneys' fees and costs.

53. **Typicality – Rule 23(a)(3)**. Plaintiff's claims are typical of the claims of the Class because, like Class members, it paid premiums for its general commercial liability to Defendant. In this respect, Plaintiff's claims are typical of the claims of the members of the Class as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class is common to the members of each.

54. **Adequacy of Representation – Rule 23(a)(4)**. Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

55. **Superiority – Rule 23(b)(3)**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done them. Furthermore, even if Class members could afford

such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

56. Additionally, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

a. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate.

## COUNT ONE
### Breach of Contract
**(Brought by Plaintiff and the Class Against Defendant)**

57. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

58. Plaintiff and the Class entered insurance contracts with Defendant State Farm.

59. Under the insurance contracts, Defendant State Farm agreed to provide liability coverage for the policy period in exchange for a premium.

60. Defendant State Farm used its rules and rates to determine Plaintiff and the Class members' exposure to calculate premiums.

61. Defendant State Farm calculated premiums as if the Plaintiff and the Class would have been open to the public for the full policy period.

62. Plaintiff and the Class met their obligations and have paid their premiums.

63. In reality, Plaintiff and the Class members have not been operating for the full policy period and their exposure is much less than Defendant State Farm has calculated.

64. If Defendant State Farm factored in the shutdown and COVID-19 when it applied its rules and rates, then Plaintiff and the Class would pay less in premiums.

65. Plaintiff and the Class have overpaid their premiums because Defendant State Farm did not properly apply their rules and rates.

66. Defendant State Farm breached its contract by not properly applying its rules and rates to calculate Plaintiff and the Class members' premiums.

67. As a result of Defendant State Farm's breach, Plaintiff and the Class have sustained substantial damages for which Defendant State Farm is liable in an amount to be established at trial.

## COUNT TWO
## Unjust Enrichment
### (Brought by Plaintiff and the Class Against Defendant)

68. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

69. Defendant wrongfully obtained monies in the form of excess premiums from Plaintiff and the Class.

70. Defendant appreciated, accepted and retained the benefits of excess premiums from Plaintiff and the Class in the form of profits.

71. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

72. Defendant's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

73. Plaintiff and the Class are entitled to restitution of the profits unjustly obtained, plus interest.

## COUNT THREE
## Money Had and Received
### (Brought by Plaintiff and the Class Against Defendant)

74. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

75. Through virtue of the excessive premiums outlined herein, Defendant received or obtained possession of money belonging to Plaintiff and the Class.

76. Defendant appreciated a benefit of the money in its possession belonging to Plaintiff and the Class.

77. Defendant's acceptance and retention of the money was unjust.

## COUNT FOUR
## Declaratory and Injunctive Relief
### (Brought by Plaintiff and the Class Against Defendant)

78. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

79. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

80. An actual controversy has arisen and now exists between Plaintiff and the Class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policy.

81. Plaintiff seeks a declaration of the parties' respective rights and duties under the Policy and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the Policy so that future controversies may be avoided.

82. Plaintiff further seeks an injunction preventing Defendant (1) from continuing to engage in conduct in breach of the Policy in regards to overcharging for premiums, and (2) ordering Defendant to comply with the Policy's terms concerning premium calculations.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and all similarly situated entities, requests judgment and relief as follows:

1. For an order certifying the proposed Class, and appointing Plaintiff and its counsel to represent the proposed Class;

2. For an order awarding Plaintiff and Class members damages in an amount to be proven at trial, together with pre-trial and post-trial interest thereon;

3. For an order awarding Plaintiff and Class members restitution, disgorgement, rescission, or other equitable relief as the Court deems proper;

4. For an order awarding Plaintiff and the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

5. For an order awarding such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

DATE: May 28, 2020　　　　　　　　　Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

　　*/s/ Matthew L. Dameron*
Matthew L. Dameron　　MO Bar No. 52093
Eric L. Dirks　　　　　　MO Bar No. 54921
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:　(816) 945-7110
Fax:　(816) 945-7118
matt@williamsdirks.com
dirks@williamsdirks.com


Matthew V. Bartle　　MO Bar No. 40903
David L. Marcus　　　MO Bar No. 47846
**BARTLE + MARCUS LLC**
116 West 47th Street, Suite 200
Kansas City, Missouri 64112
Tel:　(816) 256-4614
Fax:　(816) 222-0534
mbartle@bmlawkc.com
dmarcus@bmlawkc.com

*Counsel for Plaintiff and the Class*